# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICKY MINNICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-110-SPS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Ricky Minnick requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2]Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 1, 1963, and was fifty years old at the time of the administrative hearing (Tr. 66, 194). He completed the eighth grade, and has worked as a termite exterminator, janitor, construction laborer, and road roller operator (Tr. 59, 217). The claimant alleges inability to work since October 31, 2011 due to heart problems, high blood pressure, and depression (Tr. 216).

## Procedural History

On October 16, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ David W. Engel, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 17, 2014 (Tr. 46-61). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full range of light and sedentary work, except that he was unable to climb ropes, ladders, and scaffolds, and was unable to work in environments where he would be exposed to unprotected heights and dangerous moving machinery parts. Additionally, the ALJ determined the claimant could understand, remember, and carry out simple to moderately detailed instructions in a

work-related setting, and he was able to interact with co-workers and supervisors, under routine supervision (Tr. 52). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, production assembler, bottling line attendant, reel assembler, and semi-conductor bonder (Tr. 59-60).

## Review

The claimant's sole contention of error is that the ALJ erred by improperly weighing the medical evidence, namely, a treating physician opinion and a consultative examiner's opinion. The Court finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of coronary artery disease, status post myocardial infarction with stent placement, hypertension, and depression (Tr. 50). The medical evidence relevant to this appeal reveals that the claimant had a heart attack in 2010, and lost his job in 2011. Following his heart attack in 2010, the claimant received follow-up treatment from the Oklahoma Heart Institute. Notes reflect that the claimant was assessed with hyperlipidemia, smoking or tobacco abuse, myocardial infarction – recent anterior, coronary atherosclerosis or native coronary artery, and cardiomyopathy ischemic, and that he was counseled to stop smoking (Tr. 323, 331, 376). Additionally, the claimant's ejection fraction had improved from 35% to 50% between August 30, 2010 and November 29, 2010 (Tr. 344). At a December 5, 2012 appointment, notes reflect that Dr. Raj Chandwaney explained to the claimant that he was not disabled from a cardiac perspective, because his ejection fraction

had returned back up to 50% and he was "doing very well" from a cardiac perspective (Tr. 400). An additional echocardiography report from February 28, 2013 reflects that the claimant's ejection fraction was 50 to 55% (Tr. 370).

On December 1, 2012, Dr. Beth Jeffries conducted a mental status examination (Tr. 355). She assessed the claimant with major depression, recurrent, severe, as well as complicated bereavement (Tr. 357). In her "Prognosis and recommendations," Dr. Jeffries stated that she believed his symptoms of depression to be fairly severe at that time, and recommended that he seek counseling because she believed he would benefit from it (Tr. 357-358). Additionally, she stated that the claimant appeared to have the ability to concentrate over an eight-hour workday and forty-hour workweek, particularly under stress conditions, and that she expected this skill to improve as he became treatment compliant and joined the workforce (Tr. 358). Further, she stated,

> I think part of his depression is not working and not having a job and I think rejoining the workforce would be beneficial to him. I thing he has the ability to manage the pace and flexibility and to socialize appropriately within a work setting. He has an adequate ability to work with authorities or supervisors. He has the ability to understand both simple and complex instructions. I think he would be more successful working at a job with the slow pace and low stress. He has the ability to understand and retain new information and then implement that information.

(Tr. 358).

On December 29, 2012, consultative examiner Traci Carney, D.O., conducted a physical examination of the claimant. Dr. Carney assessed the claimant with chest pain (with mild cardio infarction, history of stent placement, and coronary artery disease),

coronary artery disease with a history of risk factors (*i. e.*, smoking), hyperlipidemia, high blood pressure, depression, social anxiety disorder, and tobacco abuse (Tr. 363).

The claimant was treated at Payne and Rice Clinic as well. Treatment notes from Dr. John F. Rice, D.O., though sparse, indicate that he diagnosed the claimant with depression, coronary artery disease, dyslipidemia, and hypertension (Tr. 384, 391).

On May 21, 2013, Dr. Rice completed a treating physician mental functional assessment questionnaire. He indicated that the claimant's psychiatric diagnosis was depression, with signs and symptoms including decreased appetite and sleeplessness (Tr. 383). He then stated that the current functional limitations ascribed to the claimant's mental condition were sleepiness during the day and decreased energy (Tr. 383).

State reviewing physicians determined that the claimant could perform medium work with no additional limitations (Tr. 104-105, 119). As to his mental impairments, state physicians determined that the claimant was moderately limited in the typical three areas of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 106-107, 120-121). Dr. Cynthia Kampschaefer concluded that the claimant can perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation, and this was affirmed upon review (Tr. 107, 117).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony, as well as the medical evidence contained in the record. As relevant to this appeal, the ALJ discussed all of the opinion evidence in the record, including the opinions of Dr. Jeffries and Dr. Rice. The ALJ gave significant weight to Dr. Jeffries' opinion that the

claimant could understand both simple and complex instructions, concentrate over an eight-hour workday and forty-hour workweek, and could socialize appropriately within a work setting (Tr. 57). The ALJ found her opinion supported by the medical evidence (Tr. 57). As to Dr. Rice, the ALJ gave his opinion little weight (Tr. 57). Noting that he was required to assess Dr. Rice's opinion as a treating physician, the ALJ then stated that Dr. Rice failed to specify any functional limitations of abilities, it appeared his opinion was outside his expertise, and the course of treatment was not consistent with such limitations noted (Tr. 58). The ALJ noted that Dr. Rice diagnosed the claimant with depression, but there were no mental status examination notes to support it and the claimant never sought or received mental health treatment (Tr. 58). Additionally, the ALJ gave significant weight to Dr. Chandwaney's opinion that the claimant was not disabled from a cardiac perspective, noting that he was the claimant's treating cardiologist and his statement was consistent with the treatment notes from the Oklahoma Heart Institute (Tr. 56-57). The ALJ gave limited weight to the state physician findings that the claimant could perform medium work, in light of the claimant's complaints regarding shortness of breath and pain, but gave great weight to the state physician findings regarding the claimant's mental impairments (Tr. 57).

The claimant first contends that the ALJ failed to properly account for all the limitations prescribed in Dr. Jeffries' opinion, particularly her statements regarding slow pace and low stress. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a

series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

In this case, the ALJ adequately discussed and analyzed Dr. Jeffries' opinion. As discussed the above, the ALJ summarized it at length. The claimant asserts that Dr. Jeffries recommended a slow-paced, low stress job, but that does not accurately reflect her prognosis and recommendations. Rather, she first stated unequivocally that the claimant could complete a normal workday and workweek, "particularly under stress conditions" and that he had the ability to manage the pace and flexibility and to social appropriately within a work setting (Tr. 358). She then continued, opining that the claimant would be "*more* successful working at a job with the slow pace and low stress" (Tr. 358) (emphasis added); this is different than concluding that the claimant required a

slow pace and less stress. Furthermore, the ALJ noted all of these statements (Tr. 57). The ALJ thus specifically addressed Dr. Jeffries' findings. Based on this analysis, the ALJ did not commit error in failing to include any additional limitations suggested by the claimant. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

Next, the claimant contends that the ALJ failed to properly analyze Dr. Rice's opinion as a treating physician. The Court finds that the ALJ did not, however, commit any error in his analysis. As a treating physician, the ALJ was required to give Dr. Rice's medical opinion controlling weight if his opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Even if the ALJ did conclude that Dr. Rice's opinion was not entitled to controlling weight, he was nevertheless required to determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. Those factors are: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship, (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and

(vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decided to reject a medical opinion entirely, he was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301, so it would be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ's analysis of Dr. Rice's opinion is set forth above. The Court finds that the ALJ considered his opinion in accordance with the appropriate standards and properly concluded it was not entitled to controlling weight. In fact, the ALJ noted and fully discussed the findings of the claimant's various treating, consultative, and reviewing physicians, including Dr. Rice, whose opinions were contradicted by his own treating notes and Dr. Jeffries' examination (the only mental status evaluation for the claimant in the record), as discussed by the ALJ. The ALJ thus did not commit error in failing to include any limitations imposed by Dr. Rice in the claimant's RFC. *See, e. g., Best-Willie,* 514 Fed. Appx. at 737 ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The ALJ's opinion was therefore sufficiently clear for the Court to determine the weight assigned these opinions, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. The ALJ specifically noted every medical record available in this case, *and still concluded* that he could work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**